**VITEX MANUFACTURING CO., LTD., Plaintiff**

**v.**

**REUBEN B. WHEATLEY, Commissioner of Finance of the Government of the Virgin Islands, Defendant**

Civil No. 154-1970

District Court of the Virgin Islands

Div. of St. Thomas and St. John

February 27, 1976

BAILEY, WOOD & ROSENBERG, ESQ. (GEORGE H. HUBSCH-MAN, ESQ.), St. Thomas, V.I., *for plaintiff*

WILLIAM L. NEFF, ESQ., Office of the Attorney General, St. Thomas, V.I., *for defendant*

YOUNG, *District Judge*

MEMORANDUM OPINION AND ORDER SUPPLEMENTING
THE MEMORANDUM OPINION FILED NOV. 4, 1975

BACKGROUND

On May 5, 1970, Vitex Manufacturing Company, Ltd. (hereinafter "VITEX") commenced an action in the Dis-

trict Court for a declaration of its rights under 33 V.I.C. § 4001(b) and 33 V.I.C. §§ 501 et seq. Despite having been issued a ten (10) year tax exemption certificate, effective September 13, 1961, pursuant to the provisions of the Industrial Incentive Act (Act No. 224, 1957 Session Laws 146), the corporation was forced to pay, albeit under protest, over $100,000 in production taxes which had been levied upon it by the Virgin Islands Department of Finance. In a Memorandum Opinion and Judgment filed August 1, 1974, this Court held that the imposition of the production tax on holders of certificates issued under the Industrial Incentive Act was an impermissible impairment of the contract rights created by the grant of the tax exemption. Accordingly the Court entered a judgment declaring that VITEX was entitled to a refund of the production taxes that it paid while holding a certificate of tax exemption.

### RECONSIDERATION OF JUDGMENT

Despite repeated demands by the plaintiff, defendant refused to refund any portion of the production taxes. Defendant also failed to process any appeal from the judgment which was entered on August 1, 1974. Whereupon VITEX filed a motion in the Form of Mandamus on July 18, 1975 seeking an Order from this Court directing defendant to comply with the aforesaid judgment. Apparently galvanized into action by the threat of a mandamus order, defendant filed a Fed. R. Civ. P. 60(b) Motion to Re-Open Judgment on the grounds that the Court lacked jurisdiction to entertain the action with respect to the last five years in question and that the statute of limitations barred an action for recovery of the production taxes during the first five year period. Briefs were filed by both sides and a hearing was held on September 24, 1975 at which time arguments of counsel were heard.

In a ruling entitled "Memorandum Opinion and Order"

filed November 4, 1975, I expressed my opinion that the "Memorandum Opinion and Judgment" filed August 1, 1974 should be amended. I ruled that the defendant's statute of limitations argument was an affirmative defense which was waived by not being raised in the responsive pleadings. (Fed. R. Civ. P. 8(c) and 12(b).) I also expressed an opinion against issuing a mandamus order, without ruling whether such an order could validly be issued, for the reason that the defendant government assured the Court that it would request the Legislature to appropriate the funds necessary to pay the judgment as it may finally be resolved. I then ruled that the judgment be reduced by permitting the plaintiff recovery for taxes paid only during the first five years and disallowing the recovery initially adjudged for the last five years. I reluctantly found in the Government's favor with regard to the last five years because VITEX's failure to file a claim or claims for a refund covering those years denies this Court subject matter jurisdiction (33 V.I.C. § 1692 and Fed. R. Civ. P. 12 (h)(3)). Although my ruling was labeled "Memorandum Opinion and Order", I did not enter any Order for the reason that counsel wanted more time to ascertain precisely which taxes paid would be subject to the refund ordered.

### CALCULATION OF REFUND

Since then, respective counsel have been unsuccessful in their endeavor to arrive at a figure representing the amount of production taxes paid for the September 13, 1961 to September 12, 1966 period. I have delayed entering judgment so far in hope that the parties could make the "difficult" calculations themselves. However, since they have been unable to agree upon just what was paid, the necessity of bringing this matter to an end compels me to make that determination for them based upon the exhibits admitted into evidence during the trial.

From the various correspondence and cancelled checks in the file, it appears that plaintiff paid $24,562.75 in production taxes from the period beginning September 13, 1961 and ending December 31, 1965. Moreover, VITEX also paid $11,557.86 in production taxes from January 1, 1966 to September 12, 1966. Therefore, since VITEX had paid, as of the latter date, $36,120.61 in production taxes to the Virgin Islands Department of Finance, at least that much is owing to it. But VITEX also has been denied the use of this money since that time. Accordingly, based upon "opportunity cost" interest rates of 6% from September 13, 1966 to June 30, 1974 and 9% thereafter, compounded annually, plaintiff is also entitled to $29,540.73 in interest.

## ATTORNEY'S FEES

Lastly, I reach the difficult questions of whether or not to allow attorney fees and, if so, the proper quantum. As opposed to the practice in England, the traditional "American Rule" is not to award counsel fees to the successful litigant in a civil action absent statutory authority to the contrary. (Alyeska Pipe Line Service Company v. Wilderness Society, 421 U.S. 240 (1975)). However, here in the Virgin Islands, 5 V.I.C. § 541(a)(6) permits the award of attorney fees as allowable costs. Nevertheless, the matter is entirely up to the discretion of the court (5 V.I.C. § 541(b)) and discretion includes the option of fixing reasonable fees or disallowing them in their entirety. (Smith v. Government of the Virgin Islands, 361 F.2d 469 (3rd Cir. 1966), Collins v. Government of the Virgin Islands, 366 F.2d 279 (3rd Cir. 1966), cert. den. 386 U.S. 958 (1967), Baptiste et al. v. Government of the Virgin Islands, Nos. 75-1330, 75-1744, 75-1468 (Decision by 3rd Cir. filed 1/9/76), and Mathurin et al. v. Government of the Virgin Islands, No. 75-1918 (Decision by 3rd Cir. filed on 1/14/76)).

■ Even though the District Court is empowered to exercise its informed discretion, which discretion will not be subject to successful challenge absent a clear abuse thereof (Tranberg v. Tranberg, 456 F.2d 173 (3rd Cir. 1972)), the Third Circuit in Lindy Bros. Bldrs., Inc. of Philadelphia v. American R. & S. San. Corp., 487 F.2d 161 (3rd Cir. 1973), clearly intimated that the mere listing of factors which the Court considered, without any discussion thereof, came perilously close to the abuse of discretion cliff. It accordingly set out certain factors which must be treated by the court in a non-trivial fashion. These guidelines were repeated in Estien v. Christian, 507 F.2d 61 (3rd Cir. 1975), approved in Merola v. Atlantic Richfield Co., 493 F.2d 292 (3rd Cir. 1974), and followed in Walter v. Netherland Mead N.V., 514 F.2d 1130 (3rd Cir. 1975). Viewed together, they express the Third Circuit's apparent philosophy that "[t]he amount of attorney's fees to be awarded to the prevailing party is . . . intended to be an indemnification . . . for a fair and reasonable portion of his attorney's fees . . . and not for the whole amount charged by the attorney . . ." (Lucerne Investment Co. v. Estate Belvedere, Inc., 411 F.2d 1205, 1207 (3rd Cir. 1969)).

■ First, the Court must inquire into the number of hours spent by the attorneys and to which various general activities the time was devoted. The mere statement that X number of hours were spent in connection with the litigation is insufficient to support an award of fees. (Lindy, supra, at p. 167 and Estien, supra, at p. 63.)

After "clocking" the services performed by the attorneys, the Court must attempt to value those services. The value of an attorney's time is generally reflected in his normal billing rate for a particular activity. But this does not terminate the investigation, for the Court "cannot properly fix attorneys' fees merely by multiplying the hourly rate for each attorney by the number of hours he worked

on the case". (Lindy at p. 167.) There are other considerations which must be taken into account in arriving at the final determination of a proper award.

The third factor is the contingent nature of success; compensation should be decreased the greater the likelihood of success and increased in the reverse situation.

Finally, the last consideration is the extent, if any, "to which the quality of an attorney's work mandates increasing or decreasing the amount to which the Court has found the attorney reasonably entitled". (Lindy at p. 168.) Quality, according to the Third Circuit, can be itself decomposed into three measurable components: (i) complexity and/or novelty of the issues presented; (ii) degree to which attorney's skill deviates from the prevailing degree in the legal community of which he is a member; and (iii) amount of recovery obtained.

█ Having set out the Lindy standards, I must now apply them to the particular facts of this case. Although the information necessary to apply the above standards can be supplied by affidavits (Tranberg, supra, at p. 175) and despite the fact that a judge is presumed knowledgeable as to the fees charged by and quality of work exhibited by attorneys in general (Lindy at p. 169), I find that plaintiff's counsel's affidavit is of little help to my determination. There is but a brief statement that there was expended 120 hours on this matter. Nowhere is this broken down into pre-trial, trial, or post-trial segments. There is no accounting for time spent in drafting pleadings, in research, in pre-trial discovery, in pursuit of settlement, in preparation for trial, etc. There is no itemization as to whether these 120 hours were spent solely by the senior partner or by his junior partners or employed associates. There is no indication of the usual billing rate nor whether the firm has different rates depending upon the activities performed. In fairness to counsel, his affidavit is not vastly different

from the accustomed practice in the Virgin Islands. Yet, such lack of concern for "details" should not be allowed to continue in light of Lindy and Estien. As Judge Wyzanski observed over a decade ago in Cherner v. Transitron Electronic Corp., 221 F.Supp. 55, 61 (D. Mass. 1963):

[U]nless time spent and skill displayed be used as a constant check on applications for fees there is a grave danger that the bar and bench will be brought into disrepute....

Passing on to the last two factors mentioned in Lindy—contingency of success and quality of work—I am compelled to make several unflattering observations. First, had plaintiff by its then retained attorneys instituted this action seven years ago instead of waiting, the issues presented would not have become as muddied as they did. Second, the mere statement that the evolvement of the case was confusing (necessitating three Memorandum Opinions so far) does not mean that the issues were complex. There was but one issue and it was quite straight-forward: the relationship between the Industrial Incentive Act and the Production Tax Act. The post-trial arguments re: subject matter jurisdiction and statute of limitations arose only because plaintiff's then existing counsel neglected to file his client's claims for refunds promptly and properly.

Third, despite sometimes ingenious and sometimes devious endeavors by the government's various legal representatives over the years to throw up smokescreens, plaintiff's present trial counsel ought to have foreseen, being an able and experienced attorney for whom I have the highest professional respect, that he had a "sure" winner. Even the government's next-to-last trial counsel so admitted but confided to plaintiff's attorney and to the Court that he had to persist in his tenuous position on account of the government's obduracy. And lastly, the size of the recovery cannot be considered under the instant circumstances because more than one-half of the total recovery consists of inter-

est which has accrued primarily because of plaintiff's prior counsels' inaction.

In view of these considerations, I am limiting plaintiff to an award of $5,000.00 in attorney's fees. Since plaintiff has not submitted a Bill of Costs, this award of $5,000.00 is intended to cover the same as well as attorney's fees.