861 F.2d 1197
 HESS OIL VIRGIN ISLANDS CORP., a United States Virgin
Islands Corporation; Federal Insurance Company, a New
Jersey Corporation; and Insurance Company of North America,
a Pennsylvania Corporation, Plaintiffs-Appellants,
v.
UOP, INC., a Delaware Corporation, Defendant-Appellee.
 Nos. 84-2419, 84-2521.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 18, 1988.
 
 James T. Ferrini (Clausen Miller Gorman Caffrey & Witous, P.C., Chicago, Ill., and Knight Wagner Stuart Wilkerson & Lieber, Tulsa, Okl., John J. Witous, Richard D. Wagner, Margaret J. Orbon and Lisa Marco Kouba, of counsel, were also on the brief), for plaintiffs-appellants.
 Arthur R. Karstaedt, III, Denver, Colo. (John R. Trigg, Denver Colo., was also on the brief), for defendant-appellee.
 Before HOLLOWAY, Chief Judge, BARRETT, Circuit Judge, and SAM, District Judge*.
 HOLLOWAY, Chief Judge.
 
 
 1
 This diversity action was brought by Hess Oil Virgin Islands Corporation ("HOVIC"), and the Insurance Company of North America ("INA") and Federal Insurance Company ("FIC"), as subrogees to recover damages for an oil refinery fire on St. Croix in the Virgin Islands in 1973. Defendant Universal Oil Products, Inc. ("UOP") is an owner of patented processes and developer of a hydrobon desulphurization process which it licensed to HOVIC. Plaintiffs asserted three theories of recovery: breach of contract, breach of express and implied warranties, and negligence. The court bifurcated the action and tried the issue of liability first. The jury returned a verdict for UOP on the contract and warranties claims, and a verdict for plaintiffs on the negligence claim. After the damages trial, the jury found UOP 70% negligent and HOVIC 30% contributorily negligent.
 
 
 2
 Subsequent to the liability trial and prior to the damages trial, the trial court granted UOP's motion for partial summary judgment, holding that HOVIC had contractually exculpated UOP from liability for consequential damages and limited liability for UOP's negligence to the amount necessary to rebuild the refinery. As a result of the court's order limiting damages, plaintiffs recovery for damages was reduced by nearly 7.5 million dollars. The plaintiffs were awarded $4,009,359 by the jury as the total cost to rebuild the refinery. The trial court in its Judgment Order, entered judgment for plaintiffs for $1,166,638, with interest, after reducing the jury award $199,874 which was in excess of the proofs of loss submitted by HOVIC for property loss, and further reducing the award by 30% which represented HOVIC's percentage of negligence, and then crediting UOP with sums paid in settlement by former defendants. Plaintiffs (hereinafter "HOVIC") appeal the damages award and denial of attorney's fees, and UOP appeals the finding of liability.
 
 I.
 
 3
 HOVIC and UOP entered into several contracts and agreements which related to the development of a distillate desulphurizer, designated a DD4. The agreements included an Engineering Agreement, a Guarantee Agreement, and a Service Agreement. The Engineering Agreement related to the DD4 and obligated UOP to furnish engineering specifications which HOVIC and the general contractor would be required to follow. The Engineering Agreement contained a limitation on liability in Article 7, which read in part as follows:
 
 
 4
 (a) UOP warrants that the work and services performed by it under this agreement shall, with respect to each Unit, be performed in accordance with accepted engineering standards accepted by the U.S. Petroleum Refining industry. UOP's total liability for breach of the foregoing warranty, if any, or otherwise for any losses, damages, claims or demands arising out the work and services performed by it under this agreement, shall be limited in total to one-half of the payments made to UOP by REFINER....
 
 
 5
 (e) UOP shall not be responsible or liable for (i) defective material and equipment, or (ii) property damage or bodily injury arising out of the work and services performed under this agreement unless caused by the willful acts or negligence of UOP. Except as otherwise provided in this Article 7, UOP shall not be liable for or obligated in any manner to pay any losses, damages, claims or demands arising out of the work and services performed by it under this agreement. In no event shall UOP be liable for or obligated in any manner to pay any consequential or indirect damages.
 
 
 6
 HOVIC makes several arguments as to why the district court's decision regarding the limitation on its damages should be reversed. First, HOVIC claims that under the Illinois rule of strict construction, its contractual limitation of UOP's liability for consequential damages applies only for UOP's contractual liability and not for its negligence. Second, HOVIC asserts that an Illinois statute renders void hold harmless clauses in construction related contracts and voids the exculpatory agreement. In the alternative, HOVIC says that a portion of the damages award, treated by the trial judge as consequential damages under the exculpatory agreement, was not consequential merely because it received reimbursement for that portion of its loss under its "business interuption" policies. HOVIC also argues that the district court improperly calculated the damages reduction for the percentage of negligence for which HOVIC was found contributorily negligent, and the credit due for the amount which former defendants paid in settlement. Finally, as the prevailing party HOVIC claims that under Oklahoma law it is entitled to attorney's fees.
 
 
 7
 UOP, in its cross-appeal, asserts that the district court erroneously instructed the jury under Virgin Islands comparative negligence law. Secondly, UOP argues because the jury found that it did not breach its contract with HOVIC, the submission of HOVIC's tort claim to the jury was erroneous.
 
 
 8
 Neither party questions the district court's decision to apply Illinois law in construing the exculpatory or limiting contractual provision in the Engineering Agreement, nor disputes the correctness of the district court's reliance upon Virgin Islands law for the substantive law of negligence. The parties disagree as to the appropriate law to apply on the issue of attorney's fees.
 
 II.
 A.
 
 9
 UOP argues that the trial court committed reversible error by allowing HOVIC's negligence claims to go to the jury after it had already been determined that UOP did not breach any contract or warranty between itself and HOVIC. UOP says that the relationship between itself and HOVIC was completely contractual; that is all of its duties, obligations and rights towards HOVIC were contained in the parties' Agreements. UOP asserts that any of its acts or omissions which allegedly caused the refinery fire were activities that were required and specified in the Agreements; therefore, no independent or extracontractual duty in tort can arise which is separate from those duties expressed in the Agreements. UOP says that because HOVIC's contract and negligence claims relied on the same facts, and HOVIC's allegations of tort duties fall within one or more of UOP's contractual obligations to HOVIC, the verdict by the jury finding no breach of contract or warranties by UOP requires reversal of HOVIC's judgment based on negligence. We disagree.
 
 
 10
 UOP relies primarily on Isler v. Texas Oil & Gas Corp., 749 F.2d 22 (10th Cir.1984), Illinois Central Gulf R.R. Co. v. Pargas, Inc., 722 F.2d 253 (5th Cir.1984) and Western Industries, Inc. v. Newcor Canada Ltd., 739 F.2d 1198 (7th Cir.1984), in support of its position that HOVIC's negligence claims were precluded by a determination that no contract was breached. They are inapposite. In Isler, the plaintiffs brought a contract and negligence action against an oil and gas leasee. As part of their contract, the defendant lessee agreed to use its bests efforts to make rental payments on the property but had no responsibility to plaintiffs if it failed. However, the contract did provide that the defendant was to give plaintiffs notice prior to the discontinuation of payments. Plaintiffs sought to recover damages from defendant after he drilled two wells without notice that the lease had expired due to defendant's failure to pay. The jury found that the defendant did not breach its contract with plaintiffs, but determined that defendant was liable to plaintiffs for negligence. Id. at 22. We reversed, stating:
 
 
 11
 ... the facts alleged in plaintiffs' tort claim are precisely the same as those alleged in their contract claim. Because the contract specifically defined the rights and duties of the parties regarding rental payments and notice, thereby precluding any extracontractual tort duty regarding such payments, we must reverse the judgment for plaintiffs sounding in tort.
 
 
 12
 Id. at 24. (emphasis added). Thus, Isler makes the point that no tort duty can be imposed on a party where that party's same duties and rights are specifically defined by contract. That is not the case here. For similar reasons Western Industries and Illinois Central are not pertinent.
 
 
 13
 HOVIC does not allege any tort duties arising from any specifically defined rights in the parties' contract, but claims that UOP's negligence was founded on breach of a duty independent from those specific duties defined in the contract. In fact, UOP concedes that the contract expressly provides that it will be responsible for its own negligence. (Answer Brief of UOP, p. 10). Therefore, UOP's argument that HOVIC's negligence claims were negated by the contract, or are precisely the same as HOVIC's contractual claims, is untenable.[1]
 
 
 14
 We believe the allegations asserted by HOVIC against UOP for negligence are separate and distinct from UOP's contractual obligations owed to HOVIC. UOP's relationship to HOVIC for the performance of services imposes on UOP a duty of care to act reasonably toward HOVIC, apart from the specific duties in the parties' contract. DCR, Inc. v. Peak Alarm Co., 663 P.2d 433, 435-37 (Utah 1983); See Barr Co. v. Safeco Ins. Co, 583 F.Supp. 248, 256 (N.D.Ill.1984); Prosser & Keeton, THE LAW ON TORTS, Sec. 92 (5th ed. 1984). A party may be liable in tort for breaching an independent duty towards another, even where the relationship creating such a duty originates in the parties' contract. See Berwind Corp. v. Litton Industries, Inc., 532 F.2d 1, 6 (7th Cir.1976); DCR, Inc., 663 P.2d at 435; Atkinson v. Orkin Exterminating Co., Inc., 5 Kan.App.2d 739, 625 P.2d 505, 511 (1981). We feel that the Virgin Islands courts would apply these general principles.[2]
 
 
 15
 Thus under Virgin Islands law, HOVIC is entitled to recover all its damages proximately caused by UOP's negligence, absent any limitations imposed by law or the parties. Jackson v. First Nat. Bank, 415 Ill. 453, 114 N.E.2d 721, 725 (1953). UOP's duties to use reasonable care in providing its services to HOVIC and to warn HOVIC of any dangerous condition, do not originate from the parties' contract as argued by UOP; rather, these distinct duties are created from the general duty of care which accompanied the ongoing relationship between UOP and HOVIC in designing, erecting and operating the oil refinery. The trial court's submission of HOVIC's negligence claims against UOP to the jury was proper.
 
 B.
 
 16
 Next, UOP asserts that the trial court committed two errors in the handling of special interrogatories. First, UOP argues the trial court incorrectly submitted a special interrogatory to the jury which did not correctly apply Virgin Islands comparative negligence law. Second, UOP argues the trial court failed to resubmit a special interrogatory which was returned unanswered by the jury.
 
 
 17
 UOP's claims arise from the trial court's submission of two special instruction forms to the jury. One, which came back unanswered, stated that the jury was to consider the negligence of HOVIC, UOP and the three settling defendants taken as a whole. The other, which was answered, disregarded the negligence of all parties other than HOVIC and UOP and called for the percentage of negligence of only UOP (70% was the answer) and HOVIC (30% was the answer). UOP argues that it is the answered special interrogatory that was submitted in error by the trial court. HOVIC responds that UOP did not timely object to the answered interrogatory's submission to the jury. Also, HOVIC argues UOP failed to request that the trial court resubmit the unanswered interrogatory for further deliberation. Thus HOVIC concludes that UOP waived its right to appeal any of the special interrogatory issues. Finally, HOVIC claims that in any event, UOP's requested jury instruction, which was returned unanswered, incorrectly stated Virgin Islands law; therefore, any error by the district judge in not resubmitting the unanswered instruction to the jury was harmless.
 
 
 18
 We feel that UOP's claim of error in submission of the interrogatory inquiring only for the respective percentages of negligence of UOP and HOVIC cannot be asserted. Generally, UOP should have stated its objections to any instruction, including the special interrogatory answered by the jury, distinctly and clearly enough to apprise the trial court of the particular objection, and before the jury retired to consider its verdict. Fed.R.Civ.Proc. 51; Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1514-15 (10th Cir.1984), aff'd, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985); Kirkendoll v. Neustrom, 379 F.2d 694, 698 (10th Cir.1967) (Rule 51 requirement of timely objection applies to special interrogatories). UOP has not provided us with any reference to the record showing that it objected to the answered special interrogatory prior to the time that it was submitted to the jury for deliberation.
 
 
 19
 Although UOP asserts that it has suffered prejudice by not being informed which special interrogatory was going to be submitted to the jury on liability, the fact that its own requested interrogatory was one of the two submitted shows the lack of merit in its argument. Finally, UOP's assertion that it satisfied the requirements of Rule 51 by stating to the judge that its requested interrogatory properly reflected Virgin Islands law and was contrary to HOVIC's position on that law, again is unpersuasive in light of the fact that its requested special interrogatory was actually submitted to the jury.
 
 
 20
 In support of its contention that the trial court erred by failing to resubmit the unanswered interrogatory to the jury, UOP asserts the trial court could have instructed the jury to respond to the unanswered interrogatory before the damages phase of the trial. UOP points out that it objected to the failure of the jury to answer the second interrogatory in a post-trial motion and that although this was done after the jury was excused following the liability trial, the jury was not discharged but recalled later for the damage trial. UOP says that the trial court's failure to require the jury to answer the unanswered interrogatory prevented the jury from applying the correct Virgin Islands comparative negligence law.
 
 
 21
 UOP's assertion that the trial court erred by failing to resubmit its requested special interrogatory to the jury (also asking for the percentages of negligence of three other parties) at the time it was revealed that it was returned unanswered is without merit. See Bridges v. Chemrex Specialty Coatings, Inc., 704 F.2d 175, 180 (5th Cir.1983) (jury's failure to reach a verdict on every interrogatory does not prevent a court from accepting the properly answered interrogatory). Moreover, UOP has not provided any reference to the record where its counsel requested that the unanswered instruction be resubmitted to the jury before it was excused after the liability trial. Trial counsel for UOP simply commented that the unanswered interrogatory by the jury was "strange."[3] Appendix of Defendant-Appellee, Cross-Appellant, p. 179. We feel that UOP waived this claim of error by not objecting on the record that its requested instruction was not answered by the jury, and by not requesting the trial court to resubmit the unanswered instruction for further deliberation. Although UOP raised this issue in a post-trial motion, UOP had a responsibility to make the court aware of its desire to have the instruction resubmitted once UOP became aware that it was unanswered. When UOP's counsel was made aware of the jury's failure to answer the interrogatory which included the settling parties, and did not then object nor request the trial judge to resubmit the interrogatory to the jury, UOP failed to preserve this issue for appeal. See Hidalgo Properties, Inc., v. Wachovia Mortg. Co., 617 F.2d 196, 200-01 (10th Cir.1980).
 
 
 22
 We believe that the answered interrogatory inquiring about the percentages of negligence of only UOP and HOVIC correctly reflects Virgin Islands law. UOP argues that Virgin Islands' comparative negligence law[4] compelled the trial court to resubmit to the jury the unanswered instuction which included language quantifying the percentages of negligence, if any, of the three settling defendants as well. However we find that UOP's requested special interrogatory did not correctly reflect Virgin Islands law on determining liability for comparative negligence; therefore, the jury's failure to answer the unanswered interrogatory, even if preserved for appeal procedually, was harmless. See 28 U.S.C. Sec. 2111 (1982).
 
 
 23
 UOP argues that under Virgin Islands' comparative negligence law, before HOVIC can recover there must be a determination that UOP's percentage of negligence was equal to or exceeded HOVIC's percentage of negligence in light of that of all the parties, including the settling defendants. UOP's assertion that the trial court erred by relying on the interrogatory form which included only UOP and HOVIC cannot be supported from the language in Sec. 1451. UOP cites no authority which would support its position that absent or phantom parties must be included in the determination of degrees of liability under the statute. We agree with HOVIC that the percentages, if any, of the non-party defendants' negligence is not relevant to the issue whether HOVIC can recover from UOP for its negligence. Under the Virgin Islands' joint and several liability rule, UOP would still remain legally responsible to HOVIC for all of HOVIC's damages, even if it was found to be only negligent as a minor percentage of fault and could obtain contribution from other defendants. V.I.CODE ANN. tit. 5, Sec. 1451(a) and (d).
 
 
 24
 The determination of the percentages of fault of the settling parties would have been pertinent only if there had be a question of contribution among the tortfeasors. In Lentz v. Freeman Associates Caribbean, Inc., 441 F.Supp. 892, 895 (V.I.1977), the court noted that "[e]ach defendant is as responsible to plaintiff for the whole of his injury as if it were the sole causal factor. The relative degrees of fault of the defendants, as well as their relative financial capabilities, become germane solely within the ambit of actions for contribution."
 
 
 25
 Thus the degrees of negligence, if any, of the settling defendants have no relevance to the determination whether UOP is liable to HOVIC for its own negligence under the Virgin Islands statute. See n. 4, supra. Furthermore, the absence of any finding on negligence of the settling parties does not conflict with Virgin Islands law on HOVIC's right to collect 100% of its allowable damages from UOP. Since the answered interrogatory correctly reflected Virgin Islands law, UOP cannot complain that it was prejudiced by the trial court's alleged procedural errors regarding the unanswered jury instruction.
 
 III.
 A.
 
 26
 HOVIC vigorously challenges the trial judge's ruling that limited HOVIC's recovery by restricting damages on the negligence claim to property damage and bodily injury, and denying recovery for business interruption and lost profits. HOVIC says, inter alia, that this summary judgment ruling was in error because the provisions in the Engineering Agreement did not contain "clear and explicit" and "unequivocal" wording required by Illinois law to so limit liability for negligence.
 
 
 27
 The trial judge made this ruling in his order granting partial summary judgment. He reviewed the several agreements of the parties and considered Illinois law which was found controlling in interpretation of limitations on UOP's liability. The judge focused primarily on Article 7 of the Engineering Agreement and several opinions applying Illinois law, particularly Berwind Corp. v. Litton Industries, Inc., 532 F.2d 1 (7th Cir.1976).
 
 
 28
 The trial judge reviewed the factors analyzed in the Berwind case.[5] In discussing the several factors from Berwind, the trial judge concentrated on the use of the terms "consequential" and "indirect" and held that "consequential" in the last limiting sentence of Article 7(e) was a reference to contract damages and also that "indirect" had no specific meaning as to negligence damages. Order at 17-18.
 
 
 29
 The trial judge further said that Article 7(a) of the Engineering Agreement provided for liquidated damages for UOP's breach of its warranties to HOVIC and was irrelevant to negligence damages. Finally he concluded that Subsection 7(e) "provides that UOP will be liable in a cause of action for property damages and bodily injury, and for no other damages. This precludes plaintiff's recovery in a negligence action for business interruption loss and loss of profits, that is, for all damages except property damage and bodily injury." Order at 19. This last interpretation is the one challenged by HOVIC in this appeal.
 
 
 30
 In Berwind, the Seventh Circuit pointed out that under Illinois law there are three prerequisites to be met before an exculpatory clause will be deemed to defeat a claim: the clause must be strictly construed; the interpretation is made with every intendment considered against the party who seeks immunity from liability; and the clause must spell out the intention of the parties with the greatest of particularity. 532 F.2d at 4. Despite these strict rules of construction, a specific reference to negligence or its cognates is not required for a limitation to apply. And Berwind pointed out that the Illinois Supreme Court had recently concluded that contractual provisions involved in such cases "are so varied that each must stand on its own language and little is to be gained by an attempt to analyze, distinguish or reconcile the decisions. The only guidance afforded is found in the accepted rule of interpretation which requires that the agreement be given a fair and reasonable interpretation based upon a consideration of all of its language and provisions." Id. at 4-5 (quoting Tatar v. Maxon Construction Co., 54 Ill.2d 64, 294 N.E.2d 272, 273-74 (1973)). On the basis of the contractual provisions before it, the Seventh Circuit held that the parties had not by clear and explicit language, or by intention expressed in unequivocal terms, provided for exculpation as to the seller's negligence as well as to contractual breaches. Id. at 8.
 
 
 31
 We are convinced that the trial judge properly construed the agreements. The final sentence of Article 7(e) provided that "[i]n no event shall UOP be liable for or obligated in any manner to pay any consequential or indirect damages." This provision was held not clear enough to exclude negligence liability, as noted above, and we agree. We agree further, however, that the first sentence of Article 7(e) did effectively limit UOP's liability on a negligence claim to liability for property damage and bodily injury only.
 
 
 32
 In Article 7, which defined "Responsibility and Liability," subsection (e) in its first sentence stipulated that "UOP shall not be responsible or liable for (i) defective material and equipment, or (ii) property damage or bodily injury arising out of the work and services performed under this agreement unless caused by the willful acts or negligence of UOP...." (emphasis added). We agree with the trial judge that this provision, considered with the other portions of the agreements, effectively "precludes plaintiff's recovery in a negligence action for business interruption loss and loss of profits, that is, for all damages except property damage and bodily injury." Order at 19.
 
 
 33
 HOVIC maintains that the term "property damage" would encompass all injuries arising from a tortious act, relying on Citizens Utilities Co. v. Metropolitan Sanitary District, 25 Ill.App.3d 252, 322 N.E.2d 857 (1974), and its holding that under the Illinois constitution property is a word of general import, applying to every specie of right and interest capable of being enjoyed. Id. 322 N.E.2d at 862. The case rejected a constitutional damage claim for consequential interruption of a sewage plant's service when a new interceptor sewer was built by the district. This case and the argument based on HOVIC's broad interpretation of "property damage" are not convincing here in our contract dispute over these agreements.
 
 
 34
 We have considered the arguments pressed by HOVIC and the Illinois rules of construction. Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp., 395 Ill. 429, 70 N.E.2d 604, 607 (1947), does hold that an indemnity contract will not be construed as indemnifying one against his own negligence "unless such a construction is required by clear and explicit language of the contract." Tatar v. Maxon Construction Co., 54 Ill.2d 64, 294 N.E.2d 272, 273-74 (1973), also relied on by HOVIC, enforces the Westinghouse standards firmly and holds that indemnity was not provided against a general contractor's own negligence. Nevertheless, under the Illinois standards we are persuaded that the trial judge here properly construed the agreements in holding UOP's liability on the negligence claim was limited to property damage and bodily injury caused by the explosion and fire at HOVIC's DD-4 Unit. The agreement was considered carefully since it must "stand on its own language" and it was "given a fair and reasonable interpretation based upon a consideration of all of its language and provisions." Tatar, 294 N.E.2d at 273-74.
 
 B.
 
 35
 Alternatively, HOVIC argues that the liability and limitation clause in subsection (e) of Article 7 of the Engineering Agreement is void and unenforceable under the Illinois Structural Work Act.[6] Additionally, HOVIC argues that although the statute does not differentiate between agreements which provide for total exculpation and those which limit liability, agreements which limit liability thwart the policy of the statute because the reduction provides a disincentive to protect the public from harm. See, Davis v. Commonwealth Edison Co., 61 Ill.2d 494, 336 N.E.2d 881, 884 (1975) (the act serves to protect workers in the construction industry and the public from dangers associated with construction work). We are not persuaded by HOVIC's arguments.
 
 
 36
 First, subsection (e) specifically provides that UOP will be liable for its own negligence, although only for property damage or bodily injury. Nowhere in the Engineering Agreement is there language which requires HOVIC to indemnify UOP for UOP's negligence or which exculpates UOP for damages to property or bodily injury resulting from UOP's negligence.
 
 
 37
 The limitation of negligence liability to property damage and bodily injury does not justify a conclusion that HOVIC's right to recover for UOP's negligence has been unlawfully waived. The limitation clause in subsection (e) does not conflict with the policies expressed in Sec. 61 as argued by HOVIC. UOP's responsibility for property damage and bodily injury arising from its own negligence protects both workers and the public. See Davis, 336 N.E.2d at 884. The right which HOVIC claims is invalidly waived by the Agreement, in violation of Sec. 61, is the right to recover for business interruption and lost profits. We are convinced that a contractual waiver of this sort does not violate the Illinois Structural Work Act. No language in the statute requires invalidation of the limitation provision in Article 7 of the Engineering Agreement. The limitation clause in no way restricts UOP's responsibilities to workers or the public which the statute concerns. See Ralph Korte Const. Co. v. Springfield Mechanical Co., 54 Ill.App.3d 445, 12 Ill.Dec. 64, 65, 369 N.E.2d 561, 562 (1977).
 
 
 38
 In sum, we conclude that the trial court did not err in holding that the limitation clause in subsection (e) of the Engineering Agreement was not violative of the Illinois Structural Work Act.
 
 IV.
 A.
 
 39
 HOVIC contends that the reduction of the damages award by the trial judge to the amount shown on its proof of loss was error.
 
 
 40
 The jury returned a verdict for HOVIC for $4,009,359 for property damage on the negligence claim against UOP. However, the district court reduced HOVIC's damages to $3,809,484.03. This ruling was made consistently with a statement by the trial judge at a pretrial hearing to the effect that if the jury should return a verdict on the property damage claim in excess of the amount to which the insurance company was subrogated, then the court was going to "snip it off." The judge did so, reducing the recovery from the $4,009,359 verdict down to $3,809,484.03, the amount shown by the "Master Proof of Loss" of HOVIC for its property damages to which FIC was subrogated. Appendix of Plaintiff-Appellant, Cross-Appellee, p. 647.
 
 
 41
 HOVIC argues that there is no evidence in the record that any of the damages proven in support of the $4,009,359 verdict were consequential and contractually barred; that the proof of loss and checks issued are not relevant in establishing the damages caused by UOP's negligence; and that even though a portion of the total loss of $11,398,484 was paid under policies classified as "business interruption" policies, this does not mean that the payments under these policies were only for lost profits.
 
 
 42
 UOP concedes that HOVIC presented evidence which supported its claim that it suffered a property loss in the amount of $4,009,359. Nevertheless, UOP argues that the trial court was obligated to reduce HOVIC's judgment to the amount HOVIC actually spent to rebuild the refinery and the amount to which FIC is subrogated, the entire property loss claim.
 
 
 43
 The plaintiffs have not established that the trial court was in error in his ruling reducing the recovery to $3,809,484.03. In the record we have the proof of loss for the property damage claim, and it clearly includes a statement that the "Whole Loss and Damage was $3,809,484.03." Appendix of Plaintiff-Appellant, Cross-Appellee, p. 647. HOVIC has not shown that any property damage claim was retained by it, rather than being assigned to FIC and held by it as subrogee for the property damage claim. Since no error is demonstrated in the ruling, we reject HOVIC's claim of error and uphold the reduction of the damages made by the trial judge to $3,809,484.03.
 
 B.
 
 44
 The trial court, after reducing HOVIC's amount of recovery to $3,809.484.03, deducted the percentage of negligence attributable to HOVIC and then credited UOP with the $1,500,000 which HOVIC had received in settlement from former defendants. After taking into account both HOVIC's contributory negligence and the amount HOVIC received in settlement, HOVIC was awarded judgment of $1,166,638 plus costs.
 
 
 45
 HOVIC claims the trial court erred in two ways. First, UOP was not entitled to credit for the full $1,500,000; instead, it should have been limited to the extent that the $1,500,000 represented the same damages for which UOP was found liable. Second, any credit which UOP is entitled to, should have been subtracted before and not after the verdict was reduced by the percentage of negligence attributable to HOVIC.
 
 
 46
 Of course, an injured party is ordinarily entitled to only one satisfaction for each injury. U.S. Industries, Inc. v. Touche Ross & Co., 854 F.2d 1223, 1236 (10th Cir.1988). When a plaintiff receives an amount from a settling party, it is generally credited against the amount recovered by the plaintiff from a non-settling defendant, provided both the settlement and the judgment represent common damages. Id.; see also RESTATEMENT (SECOND) OF TORTS Sec. 885(3) and comments e & f (1979). The "one satisfaction rule" is applicable only where the defendant's conduct resulted in a single injury. U.S. Industries, 854 F.2d at 1236. The critical question is, if damages were awarded to HOVIC for a single indivisible injury, were the settlements between HOVIC and the settling defendants related to the same damages HOVIC recovered at trial?
 
 
 47
 We find that the HOVIC causes of action can be characterized as claims for a single injury. We reject HOVIC's argument that UOP should be denied any or part of a credit for amounts received in settlement because the terms of the settlement documents make reference to all damages and all causes of action. The fact that UOP's liability was contractually limited to only "property damages" is of no consequence. Because the defendants were jointly and severally liable under Virgin Islands law for all damages arising from the refinery fire, any amounts received in settlement clearly represent common damages entitling the nonsettling defendant to credit. Id. at 1236; see Howard v. General Cable Corp., 674 F.2d 351, 358 (5th Cir.1982).
 
 
 48
 Although HOVIC asserts that UOP is not entitled to credit for any settlement attributable to distinct or divisible injuries unrelated to the damages for which the non-settling tortfeasor is responsible, its settlement documents refer only generally to "all damages" and "all causes." Thus, as HOVIC argues in its briefs, we must look to the settlement agreements to determine the intent of the settling parties as to what damages and claims are covered. Because we find that HOVIC's agreements with the settling defendants do not expressly state how the various causes are being compromised, it would be unjust for UOP to suffer the consequences of not receiving credit.[7]
 
 
 49
 HOVIC argues in the alternative that if UOP is entitled to credit, it should receive credit only to the extent the settlement included damages consistent with the verdict. We disagree. Because the settlement documents do not reflect how the settlements relate to the various causes and damages, it would be impossible to fix a definite percentage applicable solely to a verdict limited to property damage. Second, and more importantly, even if there was some way to apply the credit consistent with the jury verdict, it would be an apportionment without a difference. Because we find that the settlements included damages for negligence, the fact that the verdict against UOP was limited to property damage does not change the result as property damages are within the ambit of negligence liability.
 
 
 50
 If HOVIC wanted to have any particular application of its settlement with the settling defendants towards UOP's liability, it should have specifically stipulated in the settlement documents what allocations of damages were applicable to each cause of action. Because of the generality of the settlement between HOVIC and the settling defendants, and the fact that the verdict against UOP included the same type of damages included in the settlements, the trial court correctly held that UOP is entitled to a full credit of $1,500,000 on its liability to HOVIC.
 
 
 51
 HOVIC further argues that the trial court erred by reducing the total damages recovered by HOVIC by its percentage of negligence, and then applying the amount of credit for its settlements with the other parties. UOP counters that the trial court correctly applied the credit after the deduction of HOVIC's percentage of negligence.
 
 
 52
 We are given no Virgin Islands' decisions on this issue and find none. While this issue has been addressed by only a few jurisdictions, we feel that the trial court should have applied the credit of settlement prior to the deduction for HOVIC's percentage of negligence, since we are persuaded that the Virgin Islands courts would likely follow the reasoning of decisions to this effect. In Rittenhouse v. Erhart, 126 Mich.App. 674, 337 N.W.2d 626, 630 (1983), in addressing whether the credit should apply before or after the plaintiff's percentage of negligence is subtracted, the court reasoned that public policy favoring settlements supports the conclusion that the credit is subtracted from the total award prior to the plaintiff's percentage of negligence. See also Jackson v. Barton Malow Company, 131 Mich.App. 719, 346 N.W.2d 591, 592-93 (1984) (by not settling, the non-settling tortfeasor runs the risk of increasing the amount he will have to pay). We agree with the reasoning that the plaintiff should not be penalized for settling. Lynn v. Southwestern Elec. Power Co., 453 F.Supp. 599, 603 (E.D.Texas 1978).
 
 
 53
 UOP argues that to follow HOVIC's reasoning, HOVIC would receive 82% of its actual property award rather than the 70% awarded by the jury. UOP cites no support for its theory that a settlement credit should be applied after HOVIC's percentage of negligence has been deducted, rather than before. But see Scott v. Cascade Structures, 100 Wash.2d 537, 673 P.2d 179 (1983) (en banc) (Tort Reform Act mandated credit deduction after plaintiff's percentage of negligence subtracted from total award); Peterson v. Multnomah County School Dist. No. 1, 64 Or.App. 81, 668 P.2d 385, 394 (1983) (jury's apportionment of fault between only one plaintiff and one defendant reflects its view of how much responsibility those parties bear for the injury compared to one another, not compared to other possible parties in which the jury is not informed). We reject UOP's argument that credit for HOVIC's settlement with the settling tortfeasors should be applied after HOVIC's deduction for its percentage of negligence from the total amount awarded from the jury, and hold the trial court did not correctly apply the credit in the same way the courts in the Virgin Islands would if confronted with this issue.
 
 
 54
 In Lentz v. Freeman Associates, Caribbean, Inc., 441 F.Supp. 892 (V.I.1977), the court, in considering how the limited liability of the government defendant would apply to the plaintiff's right to recovery, stated:
 
 
 55
 Each defendant is as responsible to plaintiff for the whole of his injury as if it were the sole causal factor. The relative degrees of fault of the defendants, as well as their relative financial capabilities, become germane solely within the ambit of actions for contribution ... The fact that our code limits recovery from the government to $25,000 should not affect the joint and several liability of the remaining tortfeasors. The burden of said statutory limitation should be borne by the private party defendants, as if the government were an insolvent joint tortfeasor, not by the injured plaintiff.
 
 
 56
 Id. at 895. We feel that this policy favoring full compensation to the injured plaintiff lends support to HOVIC's argument that the credit should be awarded under the more favorable procedure for which HOVIC argues.
 
 
 57
 We think the Virgin Islands would follow the procedure that requires that the amount of the settlements be credited to the total damages that the jury determined that the plaintiff has sustained first; then the reduction for the comparative fault of HOVIC should be made. Accordingly, on remand the district court should modify the judgment and enter a judgment in HOVIC's favor, giving credit in accord with this opinion.
 
 V.
 
 58
 HOVIC argues that as the prevailing party, it is entitled to attorney's fees as mandated by Okla. Stat. tit. 12, Sec. 940(A) (1980 Supp.).[8] The district judge disagreed and held that Oklahoma law was not applicable. He held that the law governing the substantive issues, that of the Virgin Islands, controls on the issue whether an award of attorney's fees is appropriate for the prevailing party. The judge said that because Oklahoma had no significant interest in the litigation, it would be inappropriate to award HOVIC attorney's fees pursuant to the Oklahoma statute. Applying the law of the Virgin Islands, the court held that attorney's fees should be denied to HOVIC because its one page affidavit in support of the large claim was insubstantial.[9]
 
 
 59
 We are convinced that the district court correctly looked to the Oklahoma conflict of laws rule to determine whether Oklahoma would apply its own statute on attorney's fees or that of the Virgin Islands where the substantive claim arose. Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 496-497, 61 S.Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941). We also agree with the trial court's view that Oklahoma would apply the law of the Virgin Islands since the right of recovery of the attorneys' fee is intertwined with that of the substantive right. Cf. Prudential Ins. Co. of America v. Carlson, 126 F.2d 607, 611 (10th Cir.1942) (the right to attorneys' fees is determined by the substantive rights of the parties as provided by the governing law).
 
 
 60
 The Oklahoma Supreme Court has adopted the "most significant relationship" test in determining which governing law is most appropriate in resolving rights and liabilities of parties with respect to issues in tort. Brickner v. Gooden, 525 P.2d 632, 637 (Okla.1974); see also Mills v. State Farm Mutual Auto. Ins. Co., 827 F.2d 1418, 1420 (10th Cir.1987) (recognizing Oklahoma's choice-of-law test); RESTATEMENT (SECOND) OF CONFLICT OF LAWS, Sec. 145 (1971). The factors to be considered in applying the test are: "(1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and, (4) the place where the relationship, if any, between the parties occurred." Brickner, 525 P.2d at 637.
 
 
 61
 We note that HOVIC has not objected to the application of the law of the Virgin Islands to its claim for negligence. The losses and the negligent conduct causing them occurred there. The Virgin Islands is where HOVIC conducts its business, while UOP conducts its business in Illinois. The relationship of the parties arose in Illinois where the contracts were negotiated. The only connection to the State of Oklahoma was that a former defendant, Word Industries Pipe Fabricating, Inc., was doing business in Oklahoma, subjecting itself to service of process. We are convinced that the trial judge correctly found that Oklahoma's choice-of-law would direct the attorney's fees issue to the law of the Virgin Islands. We agree with the trial judge that "Oklahoma has no significant interest, if any at all, in this litigation," and that Virgin Islands law governing the attorney's fee issue applies.
 
 
 62
 Under the Virgin Islands statute the awarding of attorney's fees is discretionary. Here all that we are shown is that the judge concluded that the one page affidavit was not substantial enough to support the claim for the fees. However, no evidentiary hearing was held. We feel that the plaintiff is entitled to an opportunity to present evidence to support the claim, and in fact the trial judge said the fee question would be considered further after the merits of this appeal are decided. Without expressing any view on the merits of the attorney's fee claim, we vacate the denial of the fees and remand for a hearing in order that a determination can be made. Vitex Mfg. Co., Ltd. v. Wheatley, 70 F.R.D. 588, 590-91 (V.I.1976).
 
 VI.
 
 63
 Accordingly, the judgment for the plaintiff HOVIC is AFFIRMED, the cause, however, being remanded for modification of the judgment as to the credits to be applied and the final determination of the judgment in accordance with this opinion. The ruling on the claim for attorney's fees is VACATED and that claim is remanded for further consideration in accordance with this opinion.
 
 
 64
 IT IS SO ORDERED.
 
 
 
 *
 Honorable David Sam, United States District Judge for the District of Utah, sitting by designation
 
 
 [1]
 HOVIC alleged that UOP was negligent in its: (1) failure to exercise care in design; (2) failure to warn of a dangerous condition of which UOP was aware; (3) failure to have competent, experienced personnel; (4) failure to provide proper engineering supervision; (5) failure to correct a defect after it became known; (6) failure to exercise care of those possessing special knowledge of the hydrobon system; (7) failure to determine that component parts of the unit did not function together properly; (8) failure to exercise care commensurate with the inherent dangers; (9) failure to specify component parts; and (10) failure to properly inspect and test. It is these allegations which HOVIC claims are separate and distinct from the contractual obligations
 
 
 [2]
 V.I.CODE ANN. tit. 1, Sec. 4 (1967) states that:
 The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.
 
 
 [3]
 UOP argues that there was no waiver of the claim of error in failure of the court to require the jury to respond to the unanswered interrogatory; that Ludwig v. Marion Laboratories, Inc., 465 F.2d 114, 118 (8th Cir.1972), is inapposite because here the objections made in post-trial pleadings of failure to require answers was timely in that the jury had only been excused from the liability, but not the damage trial, which occurred later. We disagree. The timely assertion of such an objection must be made at the trial in question
 
 
 [4]
 V.I.CODE ANN. tit. 5, Sec. 1451 (pocket part 1987):
 (a) In any action based upon negligence to recover for injury to person or property, the contributory negligence of the plaintiff shall not bar a recovery, but the damages shall be diminished by the trier of fact in proportion to the amount of negligence attributable to the plaintiff. The burden of proving contributory negligence shall be on the defendant. If such claimant is found by the trier of fact to be more at fault than the defendant, or, in the case of multiple defendants, more at fault than the combined fault of the defendants, the claimant may not recover....
 (d) Where recovery is allowed against more than one defendant, the trier of fact shall apportion, in dollars and cents, the amount awarded against each defendant. Liability of defendants to plaintiff shall be joint and several, but, for contribution between defendants, each defendant shall be liable for that proportion of the verdict as the trier of fact has apportioned against such defendant....
 
 
 [5]
 In Berwind, the court identified six factors for determining the scope and applicability of an exculpatory provision which attempts to limit a defendant's liability for tortious conduct:
 
 
 [1]
 The heading and general subject matter of the section where the exculpatory portion was located;
 
 
 [2]
 Whether the general phrase of no liability is modified by any preceding specific terminology;
 
 
 [3]
 Whether the exculpatory clause contains the words "negligence", "tort" or their cognates;
 
 
 [4]
 Whether there is any other exculpatory clause that relates to a specific cause of action that would require the general clause to be read as negating other causes of action in order to not make the general clause superfluous;
 
 
 [5]
 Whether the term "consequential" refers solely to contractual damages; and,
 
 
 [6]
 Whether the loss claimed was foreseeable
 Id. at 6-8. The Seventh Circuit found that the parties had not "by clear and explicit language" or by intention "expressed in unequivocal terms" made the limitation on liability apply to negligence as well as to contractual breaches. While the district judge here followed the Berwind method of analysis, for reasons explained in the text, he reached a different result based on the provisions of the Engineering Agreement.
 
 
 [6]
 Ill.Rev.Stat. ch. 29, Sec. 61 (1971) provides:
 An Act In Relation To Indemnity In Certain Contracts
 With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway, bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that persons's own negligence is void as against public policy and wholly unenforceable.
 
 
 [7]
 UOP argues in its brief that because the jury found only HOVIC and UOP negligent, and no determination of the settling defendants' percentage of negligence was made, HOVIC's settlements with the settling tortfeasors were gratuitous. We reject UOP's argument because the question of the respective faults of all the defendants' percentages of negligence is meaningless in the context of whether HOVIC's settlements with the settling defendants apply as a credit. Even if a finding was made that the settling defendants were responsible for some percentage of the negligence resulting in the refinery explosion, this finding would not answer the question whether in light of the damages covered in settlement agreements, UOP would be entitled to a credit for HOVIC's judgment against it for property damage alone
 
 
 [8]
 Okla.Stat., tit. 12 Sec. 940.A. provides:
 In any civil action to recover damages for the negligent or willful injury to property and any other incidental costs related to such action, the prevailing party shall be allowed reasonable attorney's fees, court costs and interest to be set by the court and to be taxed and collected as other costs of the action.
 
 
 [9]
 V.I.Code tit. 5, Sec. 541(b) (Pocket Part 1987), states:
 The measure and mode of compensation of attorneys shall be left to the agreement, expressed or implied, of the parties; but there shall be allowed to the prevailing party in the judgment such sums as the court in its discretion may fix by way of indemnity for his attorneys fees in maintaining the action or defenses thereto * * *