F I L E D
United States Court of Appeals
Tenth Circuit

AUG 14 1997

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

SUN COMPANY, INC. (R&M), a
Delaware corporation; TEXACO, INC., a
Delaware corporation,

        Plaintiffs - Appellants,

    v.

BROWNING-FERRIS, INC., a Delaware
corporation; ARK WRECKING
COMPANY OF OKLAHOMA, INC.;
HOUSING AUTHORITY FOR THE
CITY OF TULSA; PEDRICK LABS;
JOHN DOE d/b/a Pedrick Labs; ART
WEEDIN; BEVERAGE PRODUCTS
CORP.; COWEN CONSTRUCTION,
INC.; NATIONAL TANK, CO.; PEEVY
CONSTRUCTION CO. INC.; MONTE
SHIPLEY; SUN CHEMICAL
CORPORATION; OZARK MAHONING
COMPANY; THE CITY OF SAND
SPRINGS, OKLAHOMA; ATLANTIC
RICHFIELD COMPANY; PUBLIC
SERVICE COMPANY OF
OKLAHOMA; BANCOFF OIL
COMPANY; BORG INDUSTRIAL
GROUP INC., d/b/a American Container
Services; CONSOLIDATED CLEANING
SERVICE CO. INC.; CHARLES
FORHAN, d/b/a D&W Exterminating;
OIL CAPITAL TRASH SERVICES,
INC.; STEVE RICHEY, d/b/a Richey
Refuse Service; ESTATE OF JOHN D.

No. 96-5222

SHIPLEY, deceased; SHIPLEY REFUSE; ROBERT E. SPARKS, d/b/a Tulsa Industrial Services; UNION CARBIDE CORP.; WASTE MANAGEMENT OF OKLAHOMA, INC.,

Defendants - Appellees,

and

BANK IV OKLAHOMA, N.A.; STAN DOYLE; FLEMINGS ROOFING AND SHEET METAL COMPANY; GRANT GILL, d/b/a Gill Sanitation; INSULATION SERVICES, INC.; WRG CONSTRUCTION COMPANY, INC.; W.R. GRIMSHAW, d/b/a WRG Construction; TULSA COUNTY PUBLIC FACILITIES AUTHORITY; JAMES P. EVATT; F&G EXCAVATION; JOHN DOE, d/b/a F&G Excavation; NELLIE FARRIS; FIRST TOWER CONSTRUCTION; JOHN DOE, d/b/a First Tower Construction; MARVIN R. HALL; SM ROOF; JOHN DOE, d/b/a SM Roof; ESTATE OF ROSS SCOGGINS, SR., deceased; TANDY INDUSTRIES, INC.; W & D BUILDING; JOHN DOE, d/b/a W & D Building; WADE TRASH; JOHN DOE, d/b/a Wade Trash; COMPASS INDUSTRIES, INC.; ESTATE OF JACK DYER, deceased; ROY L. FARRIS; NOLAND CONSTRUCTION CO.; JOHN DOE, d/b/a Noland Construction Co.; MANNON TRUCKING; JOHN DOE, d/b/a Mannon Trucking; MOBILE WASTE CONTROLS; JOHN DOE, d/b/a Mobile Waste Controls; TULSA

TANK CLEANING; JOHN DOE, d/b/a Tulsa Tank Cleaning; APARTMENT CONTAINER SERVICE, INC.; CARNES BROTHERS CONSTRUCTION COMPANY; CRAIN DISPLAYS & EXHIBITS, INC.; DOW CHEMICAL COMPANY, d/b/a Dow Industrial Service; EMPIRE ROOFING & INSULATION COMPANY; TOM FARRIS, d/b/a Gene's Septic Tank Service; ODEAN GARRISON; LANGSTON CONTRACTORS, INC.; PETROLEUM CONTRACTORS CORPORATION; VACUUM AND PRESSURE TANK TRUCK SERVICES, INC.; GLENN E. WYNN, JR.; ANCHOR PAINT MFG. CO.; AMRON, INC.; TULSA CONSTRUCTION & MANAGEMENT, INC.; PET CARE CEMETARY; JOHN DOE, d/b/a Pet Care Cemetary; J. B. STALLINGS, d/b/a Stallings Construction Company; BRIERLY PLUMBING TECHNOLOGIES; ROTO-ROOTER SEWER SERVICE; O.K. TANK TRUCKS, INC.; AMERICAN SEPTIC TANK; JOHN W. DIFFEE, deceased, d/b/a Diffee Trash Services; WALTER C. DEPPE, deceased; AMERON, INC., a California Corporation.

Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-94-820-K)

---

————————————————

John H. Tucker, Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, Oklahoma (Robert P. Redemann and Michael F. Smith with him on the brief), for Plaintiffs -Appellants.

William C. Anderson, Doerner, Saunders, Daniel & Anderson, Tulsa, Oklahoma (Russell W. Kroll with him on the brief), for Defendants -Appellees.

————————————————

Before KELLY, MCWILLIAMS, and HENRY, Circuit Judges.

————————————————

KELLY, Circuit Judge.

————————————————

For the third time in as many years, we are faced with the task of further defining and clarifying the relationship between §§ 107 and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9607 and 9313. See United States v. Colorado & Eastern R.R., 50 F.3d 1530 (10th Cir. 1995); Bancamerica Commercial Corp. v. Mosher Steel of Kansas, 100 F.3d 792 (10th Cir.), as amended, 103 F.3d 80 (1996). Plaintiffs Sun Company and Texaco brought this action under both §§ 107 and 113 for costs expended in cleaning up a hazardous waste site. The district court granted partial summary judgment in favor of Defendants. The court held that as a matter of law Plaintiffs were not permitted to bring a cause of action under § 107, and that the limitations period for Plaintiffs' contribution claims under § 113 began running on the date they paid more than their fair share of the remediation costs. With this as the accrual date, the bulk of Plaintiffs' contribution

4

claims were time-barred. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm in part and reverse in part.

Background

The operative facts are not in dispute. An abandoned limestone quarry on the south bank of the Arkansas River in Tulsa County, Oklahoma was operated as a landfill from 1972 to 1976. During this time, hazardous materials were brought to the site, and eventually began to seep into the soil, surface water, and ground water near the site. In September 1984, the EPA placed the site on the National Priority List. 40 C.F.R. Part 300, App. B. Three years later the EPA issued a Record of Decision, which selected a remediation for the site consistent with the National Contingency Plan. 42 U.S.C. § 9605.

The EPA identified Plaintiffs, as well as several other parties, as Potentially Responsible Parties (PRPs) who had contributed to the waste at the site. After attempts to negotiate a consent decree were unsuccessful, the EPA issued a Unilateral Administrative Order, pursuant to § 106 of CERCLA, compelling Plaintiffs to pay the costs of remediation for the site. 42 U.S.C. § 9606. Plaintiffs agreed to perform the remediation in compliance with the administrative order and the Record of Decision. Remediation activities began in January 1990, and were completed on or by August 29, 1991. Plaintiffs incurred $6.2 million in cleanup costs.

Plaintiffs were able to identify other parties which they believed had also contributed hazardous wastes to the site, and brought this action against them on August 29, 1994, asserting a cost recovery action under CERCLA § 107 and a contribution action under CERCLA § 113. The district court granted Defendants' motion for summary judgment on the § 107 action, holding that PRP's such as Plaintiffs were not allowed to bring a cost recovery action under § 107. Citing Colorado & Eastern, 50 F.3d at 1536, the court held that regardless of the label used, the action was for an equitable apportionment of costs between PRPs and was thus a contribution action under § 113.

The limitations period for a contribution claim under § 113(g)(3) is three years. At issue is when the limitations period begins to run. Section 113(g)(3) provides as follows:

> No action for contribution for any response costs or damages may be commenced more than three years after—
>
>> (A) the date of judgment in any action under this chapter for recovery of such costs or damages, or
>>
>> (B) the date of an administrative order under section 9622(g) of this title (relating to de minimis settlements) or 9622(h) of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

42 U.S.C. § 9613(g)(3). Plaintiffs incurred cleanup costs in response to an EPA unilateral administrative order under § 106, which is not one of the triggering events above.

The district court held that the fact that Plaintiffs' action was not governed by one of these triggering events did not guarantee them an unlimited time in which to bring their suit. Rather, according to the district court, this anomaly was the result of an inadvertent

6

omission on the part of Congress. Thus, the court turned to another area of federal contribution law, and held that Plaintiffs' cause of action accrued (and the limitations period began) when they had paid more than their equitable share of the cleanup costs. With this as the accrual date, the bulk of Plaintiffs' claims for contribution were time-barred. The district court ruled that each payment should be treated separately, however, so to the extent Plaintiffs could show they made payments within three years of their filing of the instant action, they would still be entitled to seek contribution.

The district court also noted the uncertainty as to possible future costs, as the EPA's remediation order provides for thirty years of maintenance and review of the Site. Thus, it declined to rule on Plaintiffs' declaratory action regarding apportionment of such future costs, and requested further briefing on the issue. Such briefing has been abated pending the outcome of this appeal.

## Discussion

We review the grant of a motion for summary judgment de novo, applying the same standard as the district court pursuant to Fed. R. Civ. P. 56(c). Watts v. Atlantic Richfield Co., 115 F.3d 785, 790 (10th Cir. 1997). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c). "If there is no genuine issue of material fact in dispute, we must determine whether the substantive law was correctly

7

applied by the district court." Id. (quoting Harvey E. Yates Co. v. Powell, 98 F.3d 1222, 1229 (10th Cir. 1996). We review de novo the district court's construction of the relevant statutory provisions. United States v. Wicklund, 114 F.3d 151, 153 (10th Cir. 1997).

## I.

In Colorado & Eastern, we attempted to clarify the relationship between cost recovery actions under § 107 and contribution actions under § 113, specifically addressing who can recover under each provision. 50 F.3d at 1534-36. The original CERCLA legislation created only the cost recovery mechanism of § 107, which makes certain enumerated parties (PRPs) "liable for (A) all costs of removal or remedial action incurred by [government entities] . . . ; [and] (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. §§ 9607(a)(4)(A) and (B). PRPs' liability in cost recovery actions under § 107 is strict, joint and several. Colorado & Eastern, 50 F.3d at 1535 (citing Farmland Indus. v. Morrison-Quirk Grain, 987 F.2d 1335, 1339 (8th Cir. 1993); County Line Inv. Co. v. Tinney, 933 F.2d 1508, 1515 (10th Cir. 1991)). Defendants in § 107 actions could only escape joint and several liability—and have cleanup costs apportioned between themselves and other PRPs—if they could demonstrate that the harm was divisible. This was usually impossible given the nature of hazardous waste sites where wastes of varying degrees of toxicity and migratory potential are mixed. Thus, CERCLA, as originally

8

enacted, left a PRP who was singled out as a defendant in a cost recovery action without any means of apportioning costs to other PRPs who may have contributed much of the waste. Colorado & Eastern, 50 F.3d at 1535. The courts generally responded to this inequity by recognizing an implicit federal right to contribution where PRPs who were subject to joint and several liability incurred response costs in excess of their pro rata share. Id.

Congress codified this implicit right to contribution with the enactment of the Superfund Amendments and Reauthorization Act of 1986 (SARA), which added §§ 113(f) (contribution) and (g) (limitations periods) to CERCLA's scheme. We held that under this combined statutory scheme, any action by a PRP who was a defendant in a cost recovery action was a claim "by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make," and was "the quintessential claim for contribution." Id. at 1536. We reaffirmed this holding in Bancamerica Commercial, 100 F.3d at 800.

Plaintiffs argue that Colorado & Eastern is distinguishable. They claim that the Colorado & Eastern rule is limited to those situations when the plaintiff PRP has incurred cleanup costs pursuant to a civil action under §§ 106 or 107, whereas Plaintiffs in this case incurred cleanup costs without any such action. Thus, they argue, they are not limited to a § 113 contribution claim, but may also assert a cost recovery claim under § 107. We are not persuaded.

9

The fact that Plaintiffs incurred cleanup costs by complying with a unilateral administrative order, without forcing the government to take them to court, does not change their status as jointly and severally liable parties. They concede that they generated wastes containing hazardous substances that were transported to the Site. Thus, Plaintiffs' claim is still by and between jointly and severally liable parties, seeking the equitable apportionment of a payment which Plaintiffs have been compelled to make, and is still a claim for contribution. Bancamerica Commercial, 100 F.3d at 800; Colorado & Eastern, 50 F.3d at 1536.

II.

Plaintiffs' attempted distinction of Colorado & Eastern is not, however, without some merit. PRPs who have contributed waste to a site are jointly and severally liable for cleanup costs, and are limited to seeking contribution from other PRPs.[1] If those PRPs have never been defendants in a civil action under §§ 106 or 107, however, it appears that there is no statute of limitations governing their contribution claims. Section 113(g)(3) establishes a three year limitations period for contribution actions, but none of the

---

[1] We express no opinion on whether PRPs who assert their innocence with regard to any waste at a site may be able to recover all of their costs from other PRPs in an action under § 107. See Redwing Carriers, Inc. v. Saraland Apts., 94 F.3d 1489, 1496 (11th Cir. 1996); United Technologies v. Browning-Ferris Corp., 33 F.3d 96, 99-100 (1st Cir. 1994), cert denied, 513 U.S. 1183 (1995); Akzo Coatings, Inc. v. Aigner Corp., 30 F.3d 761, 764 (7th Cir. 1994).

triggering events listed in that section will occur unless the PRP incurs its cleanup costs pursuant to a § 106 or § 107 civil action brought by the government. See Pinal Creek Group v. Newmont Mining Corp., 1997 WL 362462, at *7 (9th Cir. July 2, 1997). Thus, PRPs who, like Plaintiffs here, incur cleanup costs pursuant to a unilateral administrative order (or by a consent decree, or in some cases, voluntarily) potentially have an unlimited time in which to bring their contribution claims. The district court reasoned that this anomaly was the result of an inadvertent gap in the statute, and imported a triggering event from another area of federal contribution law. Plaintiffs argue that this was unnecessary. We agree.

As we made clear in Bancamerica Commercial, § 113(f) did not create a new cause of action, nor did it create any new liabilities.[2] 100 F.3d at 800. "It is no more than a 'mechanism for apportioning [CERCLA]-defined costs.'" Id. (quoting County Line, 933 F.2d at 1517). "Thus, of necessity it must incorporate the liabilities set forth in § 107(a),

---

[2] Section 113(f) of CERCLA governs contribution claims and provides:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

42 U.S.C. § 9613(f)(1).

11

as those are the costs to be equitably apportioned."  Id.  See Pinal Creek, 1997 WL 362462, at *3 ("§ 107 created the right of contribution, [and] the 'machinery' of § 113 governs and regulates such actions"); New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1122 (3rd Cir. 1997) ("[S]ection 113 does not in itself create any new liabilities; rather, it confirms the right of a [PRP] under section 107 to obtain contribution from other [PRPs].").

It is thus clear that "because §113(f) incorporates the liability provisions of § 107, . . . a § 113(f) action for contribution is an action under § 107." Bancamerica Commercial, 100 F.3d at 801 (emphasis in original).  While a § 113 contribution action is not a "cost recovery" action under § 107 as that action has been defined, because it does not impose strict, joint and several liability on the defendant PRPs, it is an action for recovery of the costs referred to in § 107.  Under CERCLA's statutory scheme, therefore, a PRP's contribution action seeks to recover costs referred to in § 107 from PRPs whose liability is defined by § 107, but is governed by the equitable apportionment principles established in § 113(f).  See Pinal Creek, 1997 WL 362462, at *9 ("Because a claim asserted by a PRP under § 107 requires the application of § 113, a PRP is limited to a contribution claim governed by the joint operation of §§ 107 and 113.").

The contours of all CERCLA claims by and between PRPs who contributed waste to a site are thus governed by the equitable contribution principles of § 113(f), and seek to

12

recover costs referred to in § 107. A close reading of § 113(g) makes it clear, however, that not all contribution claims have the same statute of limitations.

PRPs against whom the government has brought a civil action under §§ 106 or 107 and who incur cleanup costs will do so in one of two ways: either the suit will proceed to judgment or the parties will enter into a settlement. PRPs in either situation are expressly covered by the language of § 113(f): "A person may seek contribution . . . during or following any civil action under [§§ 106 or 107] of this title." In addition, whether by judgment or settlement, the three year limitations period of § 113(g)(3) will be triggered. If the suit proceeds to conclusion, the limitations period begins running on the date of judgment. 42 U.S.C. § 9613(g)(3)(A). If the parties settle, the limitations period begins running on the date of the administrative order embodying the settlement (for § 9622(g) de minimis settlements or § 9622(h) cost recovery settlements), or on the date of entry of a judicially approved settlement. 42 U.S.C. § 9613(g)(3)(B). A judgment has its own procedural safeguards, and CERCLA settlements are subject to publication in the Federal Register and a 30-day notice and comment period. 42 U.S.C. § 9622(i).

PRPs who have incurred cleanup costs in some other way are also covered by the language of § 113(f): "Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under [§§ 106 or 107] of this title." Such PRPs, however, will not trigger the running of the limitations period in

13

§ 113(g)(3), nor will their liability be fixed with the procedural safeguards attendant to a civil action.

Contrary to the district court's ruling, however, this does not create a gap in the statute of limitations, because § 113(g)(2) covers PRPs in this situation. It provides:

> An initial action for recovery of the costs referred to in section 9607 of this title must be commenced—
>
> . . . .
>
> (B) for a remedial action, within 6 years after initiation of physical on-site construction of the remedial action . . . .

42 U.S.C. § 9613(g)(2). As we previously noted, "a § 113(f) action for contribution _is_ an action under § 107." Bancamerica Commercial, 100 F.3d at 801 (emphasis in original). It is, by definition, an action for recovery of the costs referred to in § 107. In this case, because no previous action under §§ 106 or 107 has been filed with respect to this site, Plaintiffs contribution action—while governed by the equitable principles of § 113(f)—is the "initial action" for recovery of such costs. Thus, Plaintiffs § 113(f) contribution action is the "initial action for recovery of the costs referred to in section 9607 of this title," and must be commenced "within 6 years after initiation of physical on-site construction of the remedial action." 42 U.S.C. § 9613(g)(2)(B).

Defendants argue that § 113(g)(2) covers only the traditional "cost recovery" action under § 107—which imposes strict, joint and several liability on other PRPs and which, as we have already held, is not available to Plaintiffs. We disagree because the language in question contains no such limitation. By its own terms, § 113(g)(2) covers

14

the "initial action" for the recovery of "costs referred to" in § 107. There is no question that this language covers a traditional § 107 cost recovery action brought by the government or any other person who is not a waste-contributing PRP. Nothing in that language, however, excludes a contribution action, which also seeks to recover an equitable portion of "costs referred to" in § 107, provided that particular contribution action is the "initial action" to recover such costs.

Defendants also argue that the language of § 113(g)(3) makes it clear that Congress expressly chose a three-year limitations period for all contribution claims. Thus, they argue, the six-year limitations period in § 113(g)(2) cannot apply.[3] It is true that § 113(g)(3) is subtitled "Contribution," and provides that "[n]o action for contribution for any response costs or damages may be commenced more than 3 years after—[the four enumerated triggering events]." Contrary to Defendants' arguments, however, our construction of the statute is not inconsistent with this language. A contribution claim which is the "initial action," and thus governed by the six-year limitations period of § 113(g)(2), will not be commenced more than three years after any of the four enumerated triggering events, because none of those triggering events will ever occur.

---

[3]This rationale also was expressed in Ekotek Site PRP Committee v. Self, 881 F. Supp. 1516, 1522 n.2 (D. Utah 1995), but we do not find exclusive reliance upon § 113(g)(3), see Ekotek, 881 F. Supp. at 1522-23, persuasive in these circumstances.

15

By contrast, if a contribution action is <u>not</u> the initial action, then by definition a previous action will have been filed, and one of the four triggering events in § 113(g)(3) will occur. In this way, Congress has provided an express statute of limitations to cover all CERCLA contribution actions, regardless of how the PRPs in question incurred their cleanup costs. In effect, there are two different types of contribution actions under CERCLA, each governed by the same equitable rules of § 113(f) and each seeking to equitably apportion costs referred to in § 107, but governed by different statutes of limitations. <u>See</u> <u>Key Tronic Corp. v. United States</u>, 511 U.S. 809, 816 (1994) (recognizing two "similar and somewhat overlapping" contribution actions under §§ 107 and 113).

This construction of CERCLA is internally consistent in its application of the language of the statute, and follows our precedents and the increasing body of law from other circuits. Together, §§ 107 and 113 allow "any person" who has incurred cleanup costs consistent with the National Contingency Plan to recover some or all of those costs from PRPs who were responsible for the waste. A government entity (Federal, State or Indian) or a party who did not contribute to the waste may recover all of its expenditures in a traditional § 107(a) "cost recovery" action against any PRP. Liability will be strict, joint and several. A PRP who contributed to the waste may recover from other PRPs a portion of the costs it expended in cleaning up the site in a contribution action under § 113(f). <u>Colorado & Eastern</u>, 50 F.3d at 1536. The liability of the other PRPs will be

16

defined by § 107, but under § 113(f), that liability will be several, and the total cleanup costs—including responsibility for "orphan shares"[4]—will be equitably apportioned among all the PRPs, with the court being able to consider any factors it deems relevant. Id. If the PRP incurred its cleanup costs pursuant to a civil action under §§ 106 or 107, it will have three years from the date of judgment or settlement in which to bring its contribution claim. 42 U.S.C. § 9613(g)(3). If the PRP incurred its cleanup costs in some other way, without the attendant procedural safeguards of a judgment or CERCLA settlement, its contribution action will be the initial action for recovery of such costs. That PRP will have six years from the start of remediation (or three years after completion of a removal action) in which to file. 42 U.S.C. § 9613(g)(2).

This construction of §§ 107 and 113 also gives effect to each section of the statute. See Colorado & Eastern, 50 F.3d at 1536 (rejecting a construction of the statute that would render any part of § 113 meaningless). For example, the Third Circuit expressed concern that if a PRP were allowed to seek contribution under § 107, the contribution defense of § 113(f)(2) could be circumvented, or read out of the statute. In re Reading Co., 115 F.3d 1111, 1119 (3rd Cir. 1997). Under § 113(f)(2), any party who resolves its liability to the government in an administrative or judicially approved settlement has a defense against contribution claims brought by other PRPs regarding any matters

---

[4] "Orphan shares" are those shares of the waste responsibility which are attributable to PRPs who either are insolvent or cannot be located or identified. Pinal Creek, 1997 WL 362462, at *5.

17

addressed in the settlement. 42 U.S.C. § 9613(f)(2). To the extent that Reading would find fault with our construction because it suggests the availability of a "§ 107 contribution action" for certain PRPs, we believe the Third Circuit's concern reflects a misconception of the relationship between §§ 107 and 113. Our construction of the statute does not divide contribution actions into § 113 actions and § 107 actions depending on the procedural posture of the plaintiff PRP. On the contrary, our holding merely recognizes that while all actions by and between jointly and severally liable PRPs are "actions under § 107" for purposes of liability, they are all still contribution actions governed by § 113(f). By its terms, the contribution defense embodied in § 113(f)(2) is applicable to any claim for contribution. Thus, regardless of whether the plaintiff PRP incurred costs pursuant to a civil action or through some other proceeding, any defendant PRP who has resolved its liability to the government in an administrative or judicially approved settlement may invoke the contribution defense contained in § 113(f)(2).

III

PRPs who have contributed to the waste at a site may recover from other PRPs that portion of their cleanup costs which exceeds their pro rata share. Such an action is "the quintessential claim for contribution," Colorado & Eastern, 50 F.3d at 1536, and is governed by the equitable principles of § 113(f). A PRP who incurred cleanup costs pursuant to a civil action under §§ 106 or 107 will have its contribution claim governed

by the three year limitations period set out in § 113(g)(3). A PRP who incurred cleanup costs in some other way, such as pursuant to an EPA unilateral administrative order, will have its contribution claim governed by the limitations period in § 113(g)(2), which governs "initial actions" for recovery of such costs. Accordingly, we AFFIRM the district court's dismissal of Plaintiffs' traditional cost recovery action under § 107. We REVERSE the district court with respect to Plaintiffs' § 113(f) contribution claims, and REMAND for further proceedings.