FILED
United States Court of Appeals
Tenth Circuit

May 29, 2009

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROBERT M. FRIEDLAND,

        Plaintiff - Appellant,

    v.

TIC - THE INDUSTRIAL COMPANY;
GEOSYNTEC CONSULTANTS INC.,
f/k/a Geoservices, Inc.,

        Defendants - Appellees.

------------------------------------

UNISYS CORPORATION, a Delaware
corporation,

        Amicus Curiae.

No. 08-1042

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D. Ct. No. 1:04-CV-01263-REB-KLM)**

---

Perry L. Glantz (John D. Fognani and Fritz W. Ganz, with him on the briefs),
Fognani & Faught, PLLC, Denver, Colorado, appearing for Appellant.

Terence M. Ridley, Wheeler Trigg Kennedy, LLP, Denver, Colorado, and Colin
C. Deihl, Faegre & Benson, LLP, Denver, Colorado (Lamar F. Jost, Wheeler
Trigg Kennedy, LLP, Denver, Colorado; Delmar R. Ehrich and Bruce Jones,
Faegre & Benson LLP, Denver, Colorado, with them on the brief), appearing for
appellees.

Raymond B. Ludwiszewski, Peter E. Seley, and Michael K. Murphy, Gibson,
Dunn & Crutcher, LLP, Washington, DC, filed an amicus curiae brief on behalf of

Unisys Corporation.

Before **TACHA**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

**TACHA**, Circuit Judge.

Plaintiff-appellant Robert M. Friedland filed this contribution action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") § 113(f), 42 U.S.C. § 9613(f), against defendants-appellees The Industrial Company ("TIC") and GeoSyntec Consultants Inc. ("GeoSyntec"). The district court entered summary judgment in favor of the defendants-appellees based on its determination that Mr. Friedland has already recouped all of his recoverable costs from other entities and therefore has no damages to recover in this case. Mr. Friedland appeals. We have jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

Mr. Friedland is a former director and president of Summitville Consolidated Mining Company, Inc. ("SCMCI"). From about 1984 to 1992, SCMCI operated a large gold mine facility in the Summitville Mining District near Del Norte, Colorado ("the Summitville mine"). TIC helped construct the Summitville mine. GeoSyntec provided quality assurance regarding the mine's heap leaching system, a process in which a cyanide solution is sprayed on gold-

bearing ore to precipitate the gold.

In December 1992, SCMCI declared bankruptcy and abandoned the mine. That same month, the United States Environmental Protection Agency ("EPA") took over management of the Summitville mine and instituted response actions to address actual or threatened releases of contaminated water from the mine into the environment. In 1996, after an investigation of numerous potentially responsible parties ("PRPs"), the United States and the State of Colorado sued Mr. Friedland under CERCLA § 107, 42 U.S.C. § 9607, to recover their response costs. As part of that lawsuit ("the cost-recovery action"), Mr. Friedland filed a third-party contribution complaint under CERCLA § 113, 42 U.S.C. § 9613, against twelve separate PRPs, including an entity called Industrial Constructors Corp. ("ICC"). He did not name TIC or GeoSyntec in that complaint. In December 2000, Mr. Friedland settled the claims brought against him by the United States and Colorado for $20,723,181. Mr. Friedland spent approximately $28 million on legal fees in the cost-recovery action.

Prior to that settlement, Mr. Friedland initiated at least two lawsuits relevant to this appeal. In 1999, he sued ICC and United States Fidelity & Guaranty Company ("USF&G") in Montana state court. ICC had performed work on the Summitville mine from 1987–1990 and was contractually bound to indemnify SCMCI against losses caused by ICC, and to reimburse SCMCI for settlements it had to pay as a result of those losses. USF&G had issued insurance

-3-

policies covering Mr. Friedland and ICC for the contractual liabilities undertaken by ICC. In his complaint, Mr. Friedland contended that ICC was obligated to pay all of his costs of defense, investigation, and legal liabilities, including all sums spent in settlement, in connection with the cost-recovery action. He further claimed that USF&G was obligated under the insurance policies it had issued to provide a defense and indemnification for the claims raised in the cost-recovery action.

Approximately nine months after Mr. Friedland, the United States, and Colorado reached the $20,723,181 settlement agreement in the cost-recovery action, Mr. Friedland and ICC entered into a confidential settlement agreement as to Mr. Friedland's third-party CERCLA contribution claim and to the claims he raised in the Montana state proceeding. ICC agreed to pay a certain sum[1] to Mr. Friedland and further agreed (because ICC had filed for bankruptcy) to assign him the rights to all insurance claims ICC might have against USF&G. With all claims against ICC resolved, Mr. Friedland amended his Montana state complaint to name only USF&G as a defendant. USF&G subsequently settled that suit for a specific dollar amount in December 2002.[2]

In the second lawsuit relevant to this appeal, in June 2002 Mr. Friedland

---

[1]The amount of this sum is subject to a confidentiality agreement and was filed under seal with this court.

[2]As with the ICC settlement, the amount of the USF&G settlement is subject to a confidentiality agreement and was filed under seal with this court.

sued The Travelers Indemnity Company ("Travelers") in Colorado state court for "a declaration that Travelers is fully obligated to pay the costs of investigation, defense, and liability that Mr. Friedland has incurred in connection with the legal actions brought against him claiming or asserting property damage and other alleged injuries at the Summitville Mine Site." Mr. Friedland alleged that he was a named insured under a Travelers liability policy covering sums he was legally obligated to pay because of property damage, as well as costs he incurred to defend himself. Mr. Friedland and Travelers settled the suit in October 2005.

Mr. Friedland initiated this CERCLA contribution action against TIC and GeoSyntec in June 2004. In response to an interrogatory during discovery, Mr. Friedland stated that he sought contribution for the $20,723,181 he agreed to pay to settle the cost-recovery action brought against him by the United States and Colorado. He also stated that he had already recovered more than that amount from other sources, including the USF&G and Travelers settlements. As a result of this disclosure, the defendants moved for summary judgment, arguing that because Mr. Friedland had already recovered from others amounts exceeding the payment he made to the United States and Colorado, he has no damages and no right to contribution under CERCLA § 113(f) as a matter of law. Mr. Friedland advanced two theories in response. He contended that the collateral source rule prohibits crediting the defendants in the amount of the settlement money he received from USF&G and Travelers. Alternatively, he urged the district court to

allocate the settlement money to his $28 million defense costs, rather than the $20,723,181 settlement amount. In this way, Mr. Friedland argued that he still has recoverable damages. The district court rejected both arguments and granted the motion. Mr. Friedland maintains the same two positions on appeal.

## II. DISCUSSION

A.    The Collateral Source Rule

Derived from the common law, the collateral source rule posits that "[p]ayments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." Restatement (Second) of Torts § 920A(2) & cmt. d (1979). The rule thus permits an injured plaintiff to recover more than the damages he has suffered as the result of an injury:

> the common law did not require setoffs against damage awards. Rather, plaintiffs were allowed to recover the full damages awarded against defendants even though the plaintiffs also received compensation from collateral sources. This principle of double recovery, known as the collateral source rule, provided that compensation or indemnity received by an injured party from a collateral source, wholly independent of the wrongdoer and to which he has not contributed, will not diminish the damages otherwise recoverable from the wrongdoer. . . . Subject to . . . limited exceptions, courts would not reduce a judgment because the plaintiff had received compensation from a collateral source even if the result was that the plaintiff recovered twice for a single loss.
>        The purpose of the collateral source rule was to prevent the defendant from receiving credit for such compensation and thereby reduce the amount payable as damages to the injured party. To the extent that either party received a windfall, it was considered more just that the benefit be realized by the plaintiff in the form of double

recovery rather than by the tortfeasor in the form of reduced liability.

*Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070, 1074 (Colo. 1992)

(quotations and citations omitted).  *See also Green v. Denver & Rio Grande W.*

*R.R. Co.*, 59 F.3d 1029, 1032 (10th Cir. 1995) ("The rationale for the rule is [that]

. . . public policy favors giving the plaintiff a double recovery rather than

allowing a wrongdoer to enjoy reduced liability simply because the plaintiff

received compensation from an independent source.").  Thus, courts have applied

the rule when the injured plaintiff has been compensated by, for example, social

security disability payments or unemployment compensation, *see id.*, or by the

plaintiff's insurance.  *See Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1341 (10th

Cir. 1998).

Turning to the case before us, it is far from clear that this common-law tort

principle applies to claims brought pursuant to CERCLA, a comprehensive federal

statute that addresses liability for environmental cleanup costs.  Indeed, the

section of CERCLA that governs contribution actions clarifies that "[s]uch claims

[for contribution] . . . shall be governed by Federal law."  CERCLA § 113(f)(1),

42 U.S.C. § 9613(f)(1).  But even assuming that CERCLA generally contemplates

application of the collateral source rule, it is clearly inapplicable in the specific

context of a § 113(f) contribution action by a PRP such as Mr. Friedland.

CERCLA provides for two types of actions to recoup environmental cleanup

costs: cost-recovery actions under § 107(a), 42 U.S.C. § 9607(a), and contribution

actions under § 133(f), 42 U.S.C. § 9613(f). *Young v. United States*, 394 F.3d 858, 862 (10th Cir. 2005). In a contribution action, a person who has settled a cost-recovery claim with the government (as Mr. Friedland has) may seek contributions from other PRPs. *Sun Co., Inc. v. Browning-Ferris, Inc.*, 124 F.3d 1187, 1194 (10th Cir. 1997); CERCLA § 113(f)(1), 42 U.S.C. § 9613(f)(1). We have explained that a claim for contribution is a claim "by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make . . . ." *Sun Co., Inc.*, 124 F.3d at 1190 (quotations omitted). Thus, a CERCLA contribution action is not a personal injury action by an innocent plaintiff. Instead, it is a claim between two or more culpable tortfeasors, and the policy underlying the collateral source rule—to provide the innocent party with the benefit of any windfall—is simply not advanced in such cases.

At least one other federal court has reached the same conclusion on materially indistinguishable facts. In *Basic Management Inc. v. United States*, 569 F. Supp. 2d 1106 (D. Nev. 2008), the plaintiffs filed a CERCLA contribution claim after they agreed to pay $22 million in cleanup costs to the state of Nevada. The plaintiffs' insurance policies, however, covered nearly all of those costs, leaving the plaintiffs with only a relatively small amount of out-of-pocket expenses. *Id.* at 1112. Nonetheless, the plaintiffs argued that the collateral source rule precluded the defendants from offsetting their CERCLA liability in

-8-

the amount of the insurance proceeds.  *Id.* at 1123.  The court disagreed.

Distinguishing tort cases in which the collateral source rule applies, the court

explained that "CERCLA contribution actions are not injury actions in which the

injured party is seeking compensation for damages to be made whole again."  *Id.*

at 1123–24.  The court went on:

> In other words, Plaintiffs have not been damaged and are not
> "entitled" to money as a damaged party; but rather, Plaintiffs can
> only receive reimbursement for the costs they expended beyond their
> share of actual responsibility for the environmental damage.  There is
> an actual dollar amount associated with those costs, and in this case,
> almost all of those costs have been paid directly by Plaintiffs'
> insurers, and without further right of subrogation in the insurers.  In
> other words, no party or potential party here has incurred a cost as a
> PRP for which they could seek "contribution" from another PRP.
> Allowing Plaintiffs to recover those costs "again" from Defendants
> would in essence allow Plaintiffs to profit from their own and prior
> contamination of the site simply because they are in the subsequent
> chain of title. The purpose of the Contribution element of CERCLA
> was to reallocate the remedial cost to those who were ultimately
> responsible for the pollution, not to provide a windfall recovery for
> parties who happen to be in the chain of title.

*Id.* at 1124.  Thus, the court refused to apply the collateral source rule.  *Id.* at

1125.[3]

Moreover, permitting a CERCLA contribution-action plaintiff to recoup

more than the response costs he paid out of pocket flies in the face of CERCLA's

mandate to apportion those costs equitably among liable parties.  *See* CERCLA §

113(f)(1), 42 U.S.C. § 9613(f)(1) ("In resolving contribution claims, the court

---

[3]We are unaware of any court that has applied the collateral source rule to a
claim for contribution, even outside the CERCLA context.

may allocate response costs among liable parties using such equitable factors as the court determines are appropriate."). Every federal court that has addressed the issue has reached the same conclusion, either with or without reference to the collateral source rule. *See, e.g.*, *K.C.1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1018 (8th Cir. 2007) ("Because the settlement credits [from other PRPs to the plaintiff] present a significant allocation factor [under § 9613(f)(1)] . . . the district court should have exercised its discretion to consider them when calculating the amount of the judgment."); *Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1189 (9th Cir. 2000) ("[O]ne equitable factor is preventing someone from recovering for the same harm twice."); *Basic Mgmt. Inc.*, 569 F. Supp. 2d at 1125 (refusing to apply the collateral source rule because "[e]quity and common sense . . . dictate that Plaintiffs cannot recover the remediation costs paid for by their insurance policies."); *Vine St., LLC v. Keeling*, 460 F. Supp. 2d 728, 765 (E.D. Tex. 2006) (refusing to apply the collateral source rule, reasoning that because "the Court has a broad duty to consider facts bearing on the proper equitable allocation of response costs, the monies [the plaintiff] has already recovered are relevant."); *United States v. Davis*, 31 F. Supp. 2d 45, 64 (D.R.I. 1998) ("There is nothing 'equitable' about [the] kind of an allocation" that permits the plaintiff "to recover a portion of the costs for which it already has been or will be compensated."); *Raytheon Aircraft Co. v. United States*, 2007 WL 4300221, at *3 (D. Kan. Dec. 8, 2007) (following *K.C.1986*, *Boeing*, *Davis*, and *Vine Street* and

refusing to apply the collateral source rule).[4]

The two primary cases Mr. Friedland cites in support of his argument do not undermine this conclusion. In *Louisiana Department of Transportation v. Kansas City Southern Railway*, 846 So.2d 734 (La. 2003), the Louisiana Department of Transportation and Development ("DOTD") cleaned up a site that had been polluted by Kansas City Southern Railway. The federal government reimbursed the DOTD for approximately 90% of the remediation costs it incurred cleaning the site. *Id.* at 736. Thereafter, DOTD sued Kansas City Southern Railway under the Louisiana Environmental Quality Act ("LEQA") to recover the entire cleanup cost. *Id.* Emphasizing the policy behind the collateral source rule, *id.* at 740–44, the Louisiana Supreme Court held that the rule permitted DOTD to seek the entire cleanup cost from Kansas City Southern Railway rather than only the 10% it had not recouped from the federal government: "We . . . hold that the collateral source rule applies in cases arising under the LEQA, *at least where a damaged party is seeking reimbursement only for remediation expenses*." *Id.* at 740 (emphasis added).

---

[4]Mr. Friedland argues that *Raytheon Aircraft* and *Vine Street* fail to distinguish between payments from insurance policies and private settlements from other PRPs. Although Mr. Friedland is correct that the source of the payment is relevant to whether the collateral source rule applies, the source of the payment is not relevant in the context of § 9613(f)(1)'s instruction to allocate response costs equitably. What matters is that the contribution plaintiff has recovered some or all of its response costs; the identity of the entity providing the recovery is irrelevant.

-11-

Similarly, in *Town of East Troy v. Soo Line Railroad*, 653 F.2d 1123 (7th Cir. 1980), the town of East Troy cleaned up ground water that had been polluted by Soo Line Railroad Company. The town paid for the cleanup costs with federal grant money. *Id.* at 1126. Thereafter, the town sued Soo Line under a Wisconsin nuisance statute to recover the full amount of the town's cleanup costs. *Id.* The Seventh Circuit affirmed the district court's conclusion that under Wisconsin law, the collateral source rule permitted the town to seek the entire amount of the cleanup. *Id.* at 1132.

*Louisiana Department of Transportation* and *Town of East Troy* are distinguishable in at least two significant respects. First, the plaintiffs in those cases were innocent parties, not PRPs seeking contribution from other PRPs. Indeed, the court in *Louisiana Department of Transportation* specifically limited its holding to cases in which the plaintiff is the injured party seeking reimbursement for remediation costs. Second, the causes of action in both cases arose under state law, not CERCLA. As we explained, CERCLA contribution actions are governed by federal law and permit the district court to consider equitable factors in allocating response costs. Those factors include a prior payment to the contribution plaintiff. Thus, we disagree with Mr. Friedland that these cases have any bearing on the issue before us and hold that the district court did not err in refusing to apply the collateral source rule in this CERCLA contribution action.

B.      Common Damages and Settlement Allocation

Relying on *Hess Oil Virgin Islands Corp. v. UOP, Inc.*, 861 F.2d 1197 (10th Cir. 1988) and *United States v. Burlington Northern Railroad*, 200 F.3d 679 (10th Cir. 1999), Mr. Friedland argues that the district court erred in reducing his damages by the full amount of the USF&G and Travelers settlements because those settlements do not represent damages in common with the ones at issue in this case.  We disagree.

In *Hess Oil*, Hess Oil sued UOP and other defendants after a fire caused several million dollars in damage to one of Hess Oil's refineries.  861 F.2d at 1199.  Defendants other than UOP settled with Hess Oil for $1.5 million.  *Id.* at 1207.  After a jury verdict against UOP, the district court credited it with the $1.5 million settlement and required it to pay only the remaining balance on Hess Oil's damages.  *Id.* at 1199, 1206–07.  We rejected Hess Oil's argument on appeal that UOP was not entitled to a credit.  *Id.* at 1209.  We reasoned that under the "one satisfaction rule," when the conduct of multiple defendants results in a single injury with common damages, and one of the defendants settles with the plaintiff, the amount of the settlement is credited against the amount that may be recovered from the non-settling defendants.  *Id.* at 1208.  We found a single injury and common damages in that case because the settlement agreement referred to all damages and all causes of action; it did not expressly apportion damages to specific claims.  *Id.*

We reinforced this proposition in *Burlington Northern*. The United States sued a wood treatment facility, BIC, to recover cleanup costs on a 64-acre tract of land. *Burlington Northern*, 200 F.3d at 681, 683. During the suit, the United States learned that another company, a predecessor of Burlington Northern Railroad, had owned 17.5 acres of the tract during the time of the polluting activities. *Id.* at 687. Thus, the United States added Burlington as a defendant. *Id.* Thereafter, the court entered summary judgment against the first defendant, BIC, concluding that it was liable for all response costs for the entire 64-acre tract. *Id.* After a bench trial on Burlington's liability, the court found Burlington liable only for the costs to clean up the 17.5-acre portion of the tract. *Id.* at 687–88, 695–96. It reasoned that there were two separate and distinct areas of contamination in the tract, and that Burlington only owned one of those areas. After the judgment, BIC settled with the United States for $10.7 million. *Id.* at 696. Although the settlement agreement did not allocate cleanup costs between the two distinct polluted areas, the district court ruled that the harm was divisible (that is, not common to both defendants) and thus *Hess Oil* was distinguishable. *Id.* at 698. The court accordingly credited Burlington's liability with only a portion—rather then the full amount—of the $10.7 million that the United States had received from BIC.

Thus, under *Hess Oil* and *Burlington Northern*, if Mr. Friedland's injury and the damages he alleges in this lawsuit are the same as those addressed by the

USF&G and Travelers settlements, then the defendants are entitled to a full credit in the amount of the settlements.[5]  We agree with the district court that this is the case.  Mr. Friedland admitted as much in his responses to the defendants' interrogatories.  When asked to "[i]dentify Your costs, damages, injuries or expenses arising from or caused by the Cost Recovery Action for which You seek contribution in the lawsuit," Mr. Friedland responded:

> The "costs, damages, injuries or expenses caused by the Cost Recovery Action" for which Plaintiff seeks contribution in this lawsuit are the amounts he paid to settle the CERCLA claims against him by the State of Colorado and the United States, *i.e.*, $20,288,081, and the additional response costs Plaintiff incurred when he paid $435,100 for the Conceptual Remediation Plan [for a total of $20,723,181].

And when the defendants asked Mr. Friedland to identify all payments he had received related to his "costs, damages, injuries or expenses arising from or caused by the Cost Recovery Action for which You seek contribution in the lawsuit,"—costs which Mr. Friedland himself had admitted extended only to the $20,723,181 settlement amount—he disclosed that he had received the USF&G and Travelers settlements.  He further characterized those settlements as resolving

---

[5]We recognize that *Hess Oil* and *Burlington* present a different procedural posture than the one we face in this appeal.  Those cases involved a single lawsuit against multiple defendants, whereas Mr. Friedland recovered in two previous suits against two different defendants and now seeks contribution against other defendants.  We consider this distinction immaterial.  *Hess Oil* and *Burlington Northern* center on the plaintiff's right to recover only to the extent of his damages, which is the sole issue in this appeal and which can arise in a variety of procedural circumstances.

his "claims for *damages* he sustained in the Cost Recovery Action," which we interpret as referencing the $20,723,181 settlement figure. (Emphasis added.) Thus, by Mr. Friedland's own admissions, the USF&G and Travelers settlements remedied the $20,723,181 he incurred in settling the cost-recovery action with the United States and Colorado, and this contribution action reasserts the same injury and resultant damages.

In an apparent attempt to create divisible harm where it otherwise does not exist, Mr. Friedland also contended in his interrogatory responses that a substantial portion of the amounts recovered in the USF&G and Travelers settlements were attributable to his $28 million in defense costs and not to the $20,723,181 settlement amount. The USF&G and Travelers settlement agreements, however, do not expressly or impliedly allocate the settlement money toward amounts Mr. Friedland paid in settling the underlying litigation on the one hand and for legal defense costs on the other. In *Hess Oil*, we held that the plaintiff's failure to allocate costs in this manner was fatal to its contention that the defendant was not entitled to a credit in the settlement amount. *Hess Oil*, 861 F.2d at 1209 ("If [Hess Oil] wanted to have any particular application of its settlement with the settling defendants [allocated] towards UOP's liability, it should have specifically stipulated in the settlement documents what allocations of damages were applicable to each cause of action.").

In the district court, Mr. Friedland's expert witness submitted an opinion

concerning which portions of the USF&G and Travelers settlements were paid to indemnify him and which portions were paid for defense costs. Mr. Friedland argues that the court rejected that testimony without first performing the "gatekeeping" function required by *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). *See Goebel v. Denver & Rio Grande W. R.R.*, 215 F.3d 1083, 1087 (10th Cir. 2000) ("[The] gatekeeper function requires the judge to assess the reasoning and methodology underlying the expert's opinion, and determine whether it is scientifically valid and applicable to a particular set of facts." (citing *Daubert*, 509 U.S. at 592)). We disagree. It is apparent from the district court's order that it did not refuse to consider the expert opinion based on deficiencies in the expert's qualifications or methodology. Rather, the court simply explained that "[g]iven the silence of the settlement agreements regarding allocation, this testimony is far too speculative to be admissible and consequently, does not create a genuine issue of material fact for trial." *Friedland v. The Indus. Co.*, 2008 WL 185693, at *2 n.4 (D. Colo. Jan. 18, 2008). This was not an abuse of discretion. *See Eastridge Dev. Co. v. Halpert Assocs., Inc.*, 853 F.2d 772, 782–83 (10th Cir. 1988) (trial court did not abuse its discretion in excluding expert testimony regarding the allocation of settlement money to particular claims when the settlement agreement did not contain an express allocation; proposed testimony was "tentative and speculative").

Finally, Mr. Friedland suggests that the district court's conclusion rested on

-17-

the erroneous view that USF&G and Travelers are joint tortfeasors. The district court pointed out that attorneys' fees are not recoverable in CERCLA contribution actions, *see* 42 U.S.C. § 9607(a)(4); *Key Tronic Corp. v. United States*, 511 U.S. 809, 817–19 (1994), and that settling parties should therefore make any variance from the statute absolutely clear. We agree that this statement is misplaced, as Mr. Friedland did not sue USF&G and Travelers under CERCLA. A review of the entire order, however, clarifies that this lone misstatement was harmless. The district court had already determined that Mr. Friedland's "claims are not divisible, and the general rule of [*Hess Oil*], permitting defendants full credit for the amount of any settlement, applies in the absence of an express allocation in the settlement agreements themselves." *Friedland*, 2008 WL 185693, at *2. As we explained, that conclusion is correct, and any further commentary was simply superfluous.

### III. CONCLUSION

The district court correctly concluded that the collateral source rule does not apply in this CERCLA contribution action. The court also properly determined that the alleged injury and damages in this lawsuit are the same as those addressed in the USF&G and Travelers settlements. We therefore AFFIRM the entry of summary judgment against Mr. Friedland. We GRANT the appellees' motion to file their response brief under seal and Mr. Friedland's motion to file his reply brief under seal.

-18-